IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| | : | |
| ELIZABETH GALVIN | : | |
| 4831 Indian Lane, N.W. | : | |
| Washington, D.C. 20016 | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 1:19-cv-2483 |
| | : | |
| PLANTED EARTH LANDSCAPING | : | |
| INCORPORATED | : | |
| 824 Shandy Brook Drive | : | |
| Westminster, MD 21157 | : | |
| | : | |
| Defendant | : | |

_____:

**COMPLAINT FOR RELIEF**

Paul A. Cunningham (D.C. Bar No. 263210)
Neill C. Kling (*pro hac vice* to be filed)
HARKINS CUNNINGHAM LLP
1700 K Street, N.W., Suite 400
Washington, D.C. 20006-3804
(202) 973-7600

## COMPLAINT FOR RELIEF

Plaintiff Ms. Elizabeth Galvin ("Ms. Galvin") seeks relief from this Court regarding landscaping services for which she contracted with Defendant Planted Earth Landscaping, Incorporated ("Planted Earth") and misrepresentations made by Planted Earth during and after the nominal performance of those services, which were never satisfactorily completed.

## PARTIES

1.   Plaintiff Ms. Galvin is an individual citizen and resident of the District of Columbia who has resided for more than 20 years at 4831 Indian Lane, N.W. Washington, D.C. 20016 (the "Residence").

2.   Upon information and belief, Defendant Planted Earth is a corporation incorporated in the State of Maryland and with its principal place of business in Westminster, Maryland. Planted Earth is engaged in the business of providing landscaping services.

## JURISDICTION

3.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000 exclusive of interest and costs, and this is a civil action between a citizen of the District of Columbia and a citizen of the State of Maryland.

4.   This Court may exercise personal jurisdiction over Planted Earth pursuant to D.C. Code § 13-423(a)(1)-(3) because the matter concerns work Planted Earth performed for Ms. Galvin in the District of Columbia.

## VENUE

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part

of the events or omissions giving rise to the claim occurred in this judicial district and

the property that is the subject of this action is situated within this judicial district.

## GENERAL ALLEGATIONS

6.      The back lawn and poolside lawn of the Residence (together, the "Lawn") and other

elements of the Residence garden were designed as a visual and physical extension of

the interior of the residence and are frequently used by Ms. Galvin to entertain and to

host charitable functions.

7.      Beginning in 2015, Ms. Galvin sought to improve the quality of the Lawn and other

areas of the Residence garden.

8.      In or about September 2015, Ms. Galvin, as an owner of the Residence, entered into

an agreement (the "Landscape Agreement") with Planted Earth, based on Planted

Earth's recommendations, to provide the landscaping services required to restore the

existing Lawn and underlying infrastructure to the highest levels of sustainable

health, beauty, and utility.

9.      Planted Earth estimated that the project as described in the Landscape Agreement

would take approximately four weeks to complete.

10.     In or about October 2015, Planted Earth began work at the Residence.

11.     Although Planted Earth had informed Ms. Galvin that it had completed work on the

Lawn, in or about March 2016, Ms. Galvin became aware of irregular patches of dead

or dying grass, improperly drained soil, and sunken turf throughout the Lawn.

12.     On or about March 8, 2016 and in correspondence thereafter, Ms. Galvin informed

Planted Earth, via email, of the issues at the Residence. At Ms. Galvin's request,

Planted Earth prescribed specific lawn care procedures which Ms. Galvin followed.

13.     On or about March 10, 2016, an employee of Planted Earth visited the Residence and

reported that the problems with the Lawn were "simply due to the lawn recovering

from the winter. There [were] no overly necrotic or damaged areas that [were] not

beyond simple repair."

14.     In or about April 2016, Ms. Galvin engaged Planted Earth to re-examine the

condition of the Lawn, which had not improved despite her implementation of the

lawn care procedures.

15.     In or about April 2016, Planted Earth inspected the Lawn and thereafter purported to

replace the some of the sod it had originally installed.

16.     Planted Earth informed Ms. Galvin on April 22, 2016 that it had "repaired the lawn as

necessary."

17.     The replacement sod lasted no more than three months.

18.     On or about July 11, 2016, Ms. Galvin informed Planted Earth that the replacement

and original sod was dead or dying in irregular patches and that soil was still not

draining properly.

19.     In response, on or about July 12, 2016, Planted Earth suggested "that the areas in

question are just not receiving enough light and maybe some excess water." Planted

Earth recommended that Ms. Galvin "simply treat this sod as annual [*sic*] and you

replace when the sod is starting to fail, I am not sure there is anything else we can do.

I would be happy to work up a price ot [*sic*] replace the sod if you wish or maybe the maintenance folks can simply replace the failing pieces."

20.   Additionally, Ms. Galvin informed Planted Earth that the replacement and original sod had attracted raccoons to the Residence which dug into the sod, causing further damage. With the encouragement of Planted Earth, Ms. Galvin spent substantial additional funds over several month on services to trap and remove the vermin.

21.   Throughout the following weeks, Ms. Galvin and Planted Earth continued to discuss the deteriorating quality of the Lawn. During this correspondence, Ms. Galvin repeatedly expressed concern at the condition of the Lawn and requested that Planted Earth rectify the issues.

22.   On or about August 5, 2016, Planted Earth proposed to again remove and replace the dead and dying sod on the Lawn at additional expense to Ms. Galvin.

23.   Rather than hire Planted Earth to install new sod on the Lawn for a third time in less than 12 months, Ms. Galvin engaged a third-party expert in landscaping, Mr. Dean Graves, to inspect the Lawn.

24.   On or about August 18, 2016, Mr. Graves inspected the Lawn. During the course of the inspection, Mr. Graves took multiple soil samples from the Lawn. These soil samples revealed that Planted Earth had failed to install the necessary drainage sublayer beneath the sod. This failure precluded moisture from draining into the underlying drainage infrastructure. This excess moisture led to the deterioration of the sod and to depressions which made parts of the lawn impassable on foot.

25. The information first provided by Mr. Graves on August 18, 2016, which Planted Earth had never revealed but had instead fraudulently concealed, led Ms. Galvin ultimately to discover the breaches and violations identified herein.

26. Up and through August 2016, Ms. Galvin had paid Defendant Planted Earth over $60,000 for its supposed work on the Lawn.

27. Since August of 2016, Ms. Galvin has paid other service providers tens of thousands of dollars in an attempt to remediate the damage done to the Lawn as a result of the actions, inactions, and misrepresentations of Planed Earth as set forth herein.

28. The efforts described in Paragraph 27 have been unsuccessful and Ms. Galvin remains unable to use the Lawn in the manner in which she intended.  Ms. Galvin expects to spend at least tens of thousands of additional dollars to discover and remediate the problems that Defendant Planted Earth had purported to solve, and the additional problems that Planted Earth has caused.

## COUNT I

## Breach of Contract

29. The allegations contained in Paragraphs 1 through 28 are incorporated herein by reference.

30. Planted Earth stated in the Landscape Agreement that it would "provide all necessary labor materials and equipment [*sic*] to complete the landscape work at [the Residence]." Landscape Agreement at 1. However, Planted Earth, among other things, failed to provide and install a soil sublayer necessary for the new drainage infrastructure to function.

31.     Planted Earth misrepresented in the Landscape Agreement that the full project would
take "approximately 4 weeks to complete." In fact, Planted Earth's work on the
project continued for more than nine months, and the project was never actually
completed.

32.     As a result, Planted Earth breached the Landscape Agreement.

## COUNT II

## Breach of Implied Warranties for Merchantability and Fitness for Particular Purpose

33.     The allegations contained in Paragraphs 1 through 32 are incorporated herein by
reference.

34.     The Uniform Commercial Code, as codified in District of Columbia Law, provides
that "Unless excluded or modified . . . a warranty that the goods shall be
merchantable is implied in a contract for their sale if the seller is a merchant with
respect to goods of that kind" (D.C. Code § 28:2-314(1)) and that "Goods to be
merchantable must be at least such as . . . (c) are fit for the ordinary purposes for
which such goods are used." D.C. Code § 28:2-314(2).

35.     With respect to common landscaping goods including but not limited to sod, gravel,
soil, PVC pipe, steel edging, and various other drainage infrastructure, Planted Earth
is a "merchant" under the definition at D.C. Code § 28:2-104.

36.     Such substrate as Planted Earth did install between the sod and the drainage
infrastructure was not merchantable because it did not fulfill the ordinary purpose of a
soil sublayer, *i.e.* to facilitate water drainage.

37.     Planted Earth therefore breached its implied warranty for the merchantability of the
goods it sold Ms. Galvin.

38.     The Uniform Commercial Code, as codified, further provides that "Where the seller

at the time of contracting has reason to know any particular purpose for which the

goods are required and that the buyer is relying on the seller's skill or judgment to

select or furnish suitable goods, there is unless excluded or modified under the next

section an implied warranty that the goods shall be fit for such purpose." D.C. Code §

28:2-315.

39.     As an entity holding itself out to be in the business of landscaping and comprised of

individuals with many years of experience working on high-end landscaping projects,

Planted Earth has reason to know which goods in a lawn landscaping project,

including necessary layers below the sod, are required and for what purposes. As a

lay individual, Ms. Galvin relied on Planted Earth's judgment to select and furnish

the goods necessary for the Lawn.

40.     The substrate Planted Earth installed between the sod and the drainage infrastructure

was unfit for the purpose of facilitating water drainage, and Planted Earth therefore

breached its implied warranty of fitness for this purpose.

## **COUNT III**

### **Violations of the Consumer Protection Procedures Act**

41.     The allegations contained in Paragraphs 1 through 40 are incorporated herein by

reference.

42.     Planted Earth has made numerous misrepresentations to Ms. Galvin which constitute

violations of the District of Columbia Consumer Protection Procedures Act (the

"CPPA").

7

43.   By claiming that its services would allow the Lawn to drain effectively and remain passable on foot, Planted Earth represented that its goods and services had "uses, benefits, or qualities that they do not have" in violation of the CPPA. D.C. Code § 28-3904(a).

44.   Planted Earth also represented that its goods and services were "of a particular standard, quality, grade, style, or model" when in fact they were inferior in quality. D.C. Code § 28-3904(d).

45.   By performing only superficial work, failing to repair the root cause of the damage, and claiming to have completed all necessary work, Planted Earth "falsely . . . represent[ed] that repairs, alterations, modifications, or servicing ha[d] been made and receiv[ed] remuneration therefor when they [had] not been made. D.C. Code § 28-3904(p).

46.   Planted Earth later made more misrepresentations via email to Ms. Galvin concerning the nature of continuing problems and required remedies.

47.   By repeatedly blaming exogenous factors and not disclosing its failure to install the proper sublayer, Planted Earth purposefully obfuscated material facts and misled Ms. Galvin. D.C. Code § 28-3904(e), (f).

## DAMAGES INCURRED

48.   The allegations contained in Paragraphs 1 through 47 are incorporated herein by reference.

49.   As a result of Defendant Planted Earth's Conduct alleged herein alleged, Ms. Galvin suffered monetary damages including but not limited to:

a.  The amounts that Ms. Galvin spent under the Landscape Agreement for work that
was not performed adequately and, in some cases, not performed at all.

b.  The amounts that Ms. Galvin spent under the Landscape Agreement for goods
that failed to meet the implied warranties of merchantability and fitness for a
particular purpose.

c.  The amounts that Ms. Galvin spent to rectify the damages cause to her property as
a result of the breaches and misrepresentations detailed above, which are ongoing.

d.  Amounts reflecting to the impaired value of the lawn as a venue for private and
charitable functions.

e.  Amounts reflecting the reduced value of the Residence resulting from the Lawn's
poor appearance, impassability, and suitability for its intended purposes as a
social venue.

50.  Ms. Galvin also endured and continues to endure emotional distress arising from the

actions and misrepresentations of Planted Earth, including the following:

a.  The impaired beauty and utility of her home resulting from the both the failure of
Planted Earth to perform as required under the Landscape Agreement and the
repeated misrepresentations made by Planted Earth during and following the work
it ostensibly performed.

b.  The lengthy correspondence Ms. Galvin had to carry on, the many phone calls
and meetings in which she participated, and the visits to the Residence by Planted
Earth and other contractors, which burdened Ms. Galvin with great fatigue and
diverted her time from meaningful pursuits.

c.   The limitations imposed by the actions of Planted Earth on her ability to host her

accustomed social and charitable events on the Lawn, which in turn impaired her

leadership role in her community and her capacity to perform effective

philanthropy.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that this Court enter judgment in favor of Ms.

Galvin and against Planted Earth, award her contract damages for breach, award her

compensatory damages for costs expended and to be expended in remediating the problems

caused by Planted Earth, award her additional compensatory damages for her emotional distress

and diminution of property value caused by Planted Earth, and award her treble and punitive

damages for the violations of the CPPA, as well as attorneys' fees.

Respectfully submitted,

/s/ Paul A. Cunningham
Paul A. Cunningham (D.C. Bar No. 263210)
Neill C. Kling (*pro hac vice* to be filed)
HARKINS CUNNINGHAM LLP
1700 K Street, N.W., Suite 400
Washington, D.C. 20006-3804
(202) 973-7600

Dated:  August 16, 2019